| | |
|---|---|
| **UNITED STATES DISTRICT COURT** <br> **DISTRICT OF MINNESOTA** | **DISTRICT COURT** <br> **CASE TYPE: CIVIL RIGHTS AND TORT** |

Court File No. 20-cv-00677 (NEB/DTS)

Larry Arman and Camille Arman, L.A., L.A., and L.A., by and through his parents and natural guardians Larry Arman and Camille Arman
                Plaintiffs,

vs.

Minneapolis Police Officer Matthew Severance, St. Paul Police Department Officer Jason Brubaker, St. Paul Police Department Officer Salim Omari, Saint Paul Police Deapartment Commander Timothy Flynn, Saint Paul Police Department Sergeant James Falkowski, Saint Paul Police Department Sergeant Steven J. Anderson, Saint Paul Police Department Sergeant Patrick Cheshier, the City of Minneapolis, and the City of Saint Paul
                Defendants.

**FIRST AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiffs, Larry Lee Arman and Camille Arman, individually and on behalf of their minor children, L.A., L.A., and L.A., state and allege as follows:

1. This is an action for money damages for injuries sustained by Plaintiffs as a result of the violations of their constitutional rights by the above mentioned on-duty Police Officers and the Cities of Minneapolis and Saint Paul ("Defendants"). The conduct of the Defendants violated Plaintiffs' well-settled civil rights while

acting under the color of state law. Defendants also violated the common laws of the State of Minnesota.

2. Plaintiffs bring this action pursuant to 42 U.S.C. §§ 1983 and 1988, the Fourth and Fourteenth Amendments to the United States Constitution and 28 U.S.C §§ 1331 and 1343 (3)

## PARTIES AND VENUE

3. Because all of the facts complained of arose in St. Paul Ramsey County, Minnesota, this action properly lies in the District of Minnesota

4. At all times relevant to this action, Plaintiffs were and are citizens of the United States and residents of Ramsey County, Minnesota. Plaintiffs Larry and Camille Arman are of the age of majority, and the sole custodians and guardians of their minor children, L.A., L.A., and L.A. At all times relevant to this action, Defendants were duly appointed police officers of the Cities of Minneapolis and St. Paul, Minnesota and the Cities of Minneapolis and Saint Paul.

## FACTUAL ALLEGATIONS

5. At all times relevant to this lawsuit, Plaintiffs Mr. and Mrs. Arman owned a home at 71 Maryland Avenue, St. Paul, Minnesota.

6. On the Morning of July 9, 2014, Mr. and Mrs. Arman were at home with their two sons, L.A. and L.A., as well as their two dogs. Mrs. Arman was pregnant with L.A., a third child.

7. Three family members were sleeping in the front living room of the home because parts of the home were being remodeled, while Mrs. Arman was awake and walking from room to room in the house.

8. Defendants Brubaker and Omari, who were at the Arman's home to execute a search warrant, barged through the front door without warning and began firing their automatic weapons. Defendant's did not "knock and announce," nor did they give any warning that they were entering the Arman family's home.

9. Defendants Brubaker and Omari were briefed by James Falkowski, Timothy Flynn, Sergeant Anderson, and/or Sergeant Cheshire that the dogs were aggressive when the dogs were not aggressive.

10. One of the Armans' dogs, Mello, was laying in the front living room when Defendants entered. Before the dog had time to stand up, Defendant Jason Brubaker and/or Salim Omari shot and killed the dog, splattering blood all over the area where the Armans were laying. Mello did not bark nor did he display any aggression towards Defendants. The first thing the Armans heard that morning when Defendants came through the door was the sound of gunfire killing Mello.

11. At the same time, Defendant Jason Brubaker and/or Salim Omari entered the home and began to shoot the Family's other dog, Laylow. Laylow turned and ran away from the Defendants and towards the Arman family who lay nearby. As Mrs. Arman screamed to stop shooting, and as LayLow reached Mr. Arman and began to lay down, Defendant Jason Brubaker and/or Salim Omari fired several more shots and killed LayLow in close proximity to Mr. Arman's face.

12. Defendants Jason Brubaker and Salim Omari had a clear view that all the Plaintiffs were in the line of fire.

13. As the shooting erupted in the foyer and living room, Mrs. Arman threw herself on top of her children to cover them from gun fire. The Armans were put in grave fear for their safety as well as that of their children and unborn child. The Armans' sons also feared for their own safety as well as that of their parents.

14. After killing Mello and nearly killing members of the Arman family, Defendants zip tied Mr. Arman's hands, and ransacked the house, destroying much of the family's personal property. Defendants found no evidence of criminal activity within the house.

15. Defendants attempted to pick up most of their shell casings before they left; however, once the dust settled and Mr. and Mrs. Arman were able to attend to

their traumatized children, Mr. Arman discovered several more bullets in the floor and basement of his home.

16. The Armans suffer from PTSD as a result of the Defendants' illegal conduct and thye feel humiliated that Mr. Arman was handcuffed in front of his sons.  Mrs. Arman and the children are still traumatized by seeing their pets killed and are frightened that the Defendants may come back and shoot up the house again.

## COUNT 1 – FOURTH AMENDMENT VIOLATIONS OF 42 U.S.C. 1983

Plaintiff re-allege all previous paragraphs and further state:

17. By applying for a no knock warrant and entering without knocking and announcing, killing the docile family dogs, and shooting indiscriminately into Plaintiffs' home and directly at Plaintiffs without a lawful purpose, Defendants Severance, Brubaker, and Omari acted intentionally to deprive Plaintiffs of their right to be free from unreasonable search and seizure, and excessive and unjustified deadly force.  These rights are secured to Plaintiffs by the Fourth and Fourteenth Amendments to the Constitution of the United States.

18. As a direct and proximate cause of Defendants' excessive use of force, Plaintiff have suffered physical injury, property damage, damage to the family business, pain and suffering, mental anguish and humiliation.

Plaintiff demand relief as set forth below.

## COUNT 2 – FOURTEENTH AMENDMENT VIOLATIONS OF 42 U.S.C. 1983

Plaintiffs re-allege all previous paragraphs and further state:

19. By firing multiple rounds directly at the Arman family Defendants Jason Brubaker and Salim Omari engaged in conscience shocking behavior that interfered with their fundamental rights in violation of the Fourteenth Amendment.

20. As a direct and proximate cause of the Defendants' conduct, which constitutes substantive due process violations, the Plaintiffs have been forced to endure severe mental pain and suffering for which they undergo psychiatric counseling.

21. Plaintiffs as a direct and proximate cause of Defendants' conduct, which constitutes procedural due process violations, in that the application for the search warrant is not supported by probable cause, have suffered property damage and damage to Mr. Arman's business.

Plaintiffs demand relief as set forth below.

## COUNT 3 – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Plaintiffs re-allege all previous paragraphs and further state:

22. The actions of the Defendants, including but not limited to, their failure to exercise due care, invaded the rights of all plaintiffs, who were placed in the zone of danger of physical impact and reasonably feared for their own safety as well as the safety of one another.

23. Defendant police officers are authorized and expected to use appropriate force in the execution of their duties.

24. As a direct and proximate cause of the acts of Defendant police officers, Plaintiffs have suffered severe mental and emotional distress with attendant physical manifestations as a result of the aforesaid shooting. Furthermore, no physical manifestation is necessary in this case because the "unusually disturbing experience" that Plaintiffs have endured assures the at their emotional distress is real and severe.

25. Defendants City of Minneapolis and St. Paul are jointly and severally liable for the actions of the police officers under the doctrines of agency and respondeat superior.

Plaintiffs demand relief as set forth below.

## PROPERTY DAMAGE – NEGLIGENCE

Plaintiffs re-allege all previous paragraphs and further state:

26. The actions of the Defendants, including but not limited to, their failure to exercise due care, damaged plaintiffs in that their family pets and property was destroyed, their home was damaged, and Mr. Arman's business was damaged.

27. As a direct and proximate cause of the acts of Defendant police officers as set forth above, Plaintiffs suffered physical injury, property damage, damage to the family business, pain and suffering, mental anguish and humiliation.

28. Defendant police officers are authorized and expected to use appropriate force in the execution of their duties.

29. Defendants City of Minneapolis and St. Paul are jointly and severally liable for the actions of the police officers under the doctrines of agency and respondeat superior.

30. Plaintiffs demand relief as set forth below.

## **CUSTOM AND FAILURE TO TRAIN/SUPERVISE**

Plaintiffs re-allege all previous paragraphs and further state:

31. At all times relevant to this complaint defendants Defendant Jason Brubaker and Salim Omari as police officer of the Saint Paul police department were acting under the direction and control of high ranking officials and the Cities of Saint Paul and Minneapolis.  They were also acting under the direction of Matthew Severance who applied for the search warrant, Commander Flynn, Sergeants Anderson, James Falkowski, and Cheshire of the Saint Paul Police Department.

32. Acting under color of law and pursuant to official policy or custom, defendants including Mathew Severance and the Cities of Saint Paul and Minneapolis knowingly recklessly, or with deliberate indifference and callous disregard of Plaintiff's rights, failed to instruct, supervise, control and discipline on a continuing basis Defendant police officers in their duties to refrain from (1) unnecessarily applying for no knock warrants (2) unlawfully and maliciously killing house pets in the execution of no knock warrants in front of citizens who were acting in accordance with their constitutional and statutory rights,

privileges, and immunities; (3) unlawfully and maliciously firing weapons in the direction of human beings in the execution of a no knock warrant and using unreasonable and excessive force before, during, or after the search and arrest, whether or not the arrest was lawful (4) conspiring to violate the rights, privileges, and immunities guaranteed to Plaintiffs by the Constitution of the laws of the United States and the laws of the State of Minnesota; and (5) otherwise depriving Plaintiffs of their constitutional and statutory rights, privileges, and immunities.

33. Defendants Matthew Severance, Commander Flynn, Sergeants Anderson, Falkowski, and Cheshire and the Cities of Saint Paul and Minneapolis had knowledge or, had they diligently exercised their duties to instruct, supervise, control and discipline on a continuing basis, should have had knowledge that the wrongs conspired to be done, as alleged, were about to be committed.

34. Defendants Matthew Severance, Commander Flynn, Sergeants Anderson, Falkowski, and Cheshire and the Cities of Minneapolis and Saint Paul had power to prevent or aid in preventing the commission of said wrongs, could have done so by reasonable diligence, and knowingly, recklessly, or with deliberate indifference and callous disregard of Plaintiffs' rights failed or refused to do so.

35. Defendants Matthew Severance, Commander Flynn, Sergeants Anderson, Falkowski, and Cheshire and the Cities of Minneapolis and Saint Paul, directly or indirectly, under color of law, approved or ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of Defendant Police officers described.

36. As a direct and proximate cause of the acts of Defendants Matthew Severance, Commander Flynn, Sergeants Anderson, Falkowski, and Cheshire and the Cities of Saint Paul and Minneapolis as set forth above, Plaintiff suffered physical injury, property damage, damage to the family business, pain and suffering, mental anguish and humiliation.

Plaintiffs demand relief as set forth below.

WHEREFORE, Plaintiffs pray for judgment as follows

a. Awarding plaintiffs compensatory damages against Defendants, jointly and severally

b. Awarding Plaintiffs punitive damages against Defendants, jointly and severally, which are available on the § 1983 claim against the individual officers as a matter of federal common law, Smith v. Wade, 461 U.S. 30 (1983), in an amount to be determined at trial; Plaintiffs also hereby reserve the right to amend the Complaint to add a claim for punitive damages on their State law claims; and

c. Awarding Plaintiff all of their costs and disbursements, including reasonable attorney's fees as allowed by law, including 42 U.S.C. § 1988; and

d. Granting such other relief as the Court may deem just and equitable; and

Plaintiffs demand a jury trial.

**Nickell Law Firm, PLLC**

Dated: April 30, 2020 _____  _____

Elliott J. Nickell MN# 0392992
400 South 4th Street, Suite 806
Minneapolis, MN 55415
612-564-5894
612-888-9151
elliott@nickell-lawfirm.com

The undersigned acknowledges that sanctions may be imposed if the lawsuit is being brought for an improper purpose, is not legally warranted, or lacks evidentiary support under Minn. Stat. 549.211.

**Nickell Law Firm, PLLC**

Dated: April 30, 2020  _____   _____

Elliott J. Nickell MN# 0392992
400 South 4th Street, Suite 806
Minneapolis, MN 55415
612-564-5894
612-888-9151
elliott@nickell-lawfirm.com