UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| LARRY ARMAN, CAMILLE ARMAN, and L. A. and L. A., by and through their parents and natural guardians Larry Arman and Camille Arman, | Case No. 20-CV-677 (NEB/DTS) |
| Plaintiffs, | |
| v. | ORDER ON MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS AND MOTION TO DISMISS |
| MINNEAPOLIS POLICE OFFICER MATTHEW SEVERANCE, ST. PAUL POLICE DEPARTMENT OFFICER JASON BRUBAKER, and ST. PAUL POLICE DEPARTMENT OFFICER SALIM OMARI, | |
| Defendants. | |

In the execution of a no-knock search warrant, St. Paul police officers Jason Brubaker and Salim Omari shot and killed the plaintiffs' dogs. The plaintiffs, Larry Arman and Camille Arman, brought this lawsuit alleging constitutional violations and common law claims arising from this incident. The original defendants in the case included the City of Saint Paul and a number of its police officers who executed the search warrant (together, the "St. Paul Defendants"), as well as the City of Minneapolis and Officer Matthew Severance, who filed the application for the search warrant. The St. Paul Defendants filed a motion for partial judgment on the pleadings, asserting that all claims

1

against them except for the Fourth Amendment unreasonable-seizure-of-property claim against officers Brubaker and Omari individually should be dismissed. (ECF Nos. 22, 26 at 1.) The City of Minneapolis and Severance (together, "Minneapolis Defendants") also filed a motion to dismiss the claims against them for failure to state a claim. (ECF Nos. 32, 34.)

After discussion between the parties, the Armans filed a Second Amended Complaint, dropping the cities and all individual defendants except officers Brubaker, Omari, and Severance. (ECF No. 66 ("SAC").) It alleges a single count of Fourth Amendment violations of Title 42 U.S.C. Section 1983. (*Id.* ¶¶ 17–23.) The parties agree that Count 1 contains three Fourth Amendment claims against the officers: (1) unreasonable seizure; (2) excessive force; and (3) unreasonable search and seizure based on a lack of probable cause for the no-knock search warrant.[1] The St. Paul Defendants conceded that the Armans' unreasonable-seizure and excessive-force claims should proceed but argued that the probable cause claim against Brubaker and Omari should be dismissed. (ECF No. 69 at 2.) At the hearing, the Armans informed the Court that they concede to dismissal of the probable cause claims against Brubaker and Omari. They also clarified that they allege only a probable cause claim against Severance. Thus, the Court will grant the St. Paul Defendants' motion for partial judgment on the pleadings

---

[1] At the hearing, the Armans confirmed that they no longer assert claims based on the Fourteenth Amendment, notwithstanding the reference to this amendment in the Second Amended Complaint. (SAC ¶ 2.)

2

as unopposed. This clears all the procedural smoke, leaving only the issue of whether the Second Amended Complaint states a probable cause claim against Minneapolis Officer Severance.

## BACKGROUND

The Court draws the following background from the Second Amended Complaint, accepting its factual allegations as true and drawing all reasonable inferences in the Armans' favor.[2] *See Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014).

On the morning of July 9, 2014, the Armans were in their home in St. Paul with their two sons and two dogs. (SAC ¶ 6.) Mrs. Arman was awake and moving around the house while the other family members were sleeping in the front living room. (*Id.* ¶ 7.) Pursuant to a no-knock search warrant, Officers Brubaker and Omari barged through the Armans' front door and began firing their weapons. (*Id.* ¶¶ 8, 17.) They did not announce or otherwise warn that they were entering the home. (*Id.*) Brubaker and Omari had been briefed by other officers that the Armans' two dogs were aggressive, but they were not.

---

[2] The Armans filed the Second Amended Complaint in response to the defendants' motions. Where, as here, some defects raised in the original motion remain in the new pleading, the court may consider the motion as being addressed to the amended pleading. *Bishop v. Abbott Lab'ys.*, No. 19-CV-420 (NEB/ECW), 2019 WL 6975449, at *3 (D. Minn. Dec. 20, 2019) (quoting 6 Charles Alan Wright, et al., *Federal Practice and Procedure* § 1476 (3d ed. 2019)). Because the Armans continue to assert a probable cause claim against Severance in the Second Amended Complaint, the Court considers the Minneapolis Defendants' motion as being addressed to the Second Amended Complaint.

(*Id.* ¶ 9.) When Brubaker and Omari entered, they shot and killed the Armans' dogs in front of the family. (*Id.* ¶¶ 10–11.) Brubaker and Omari then zip-tied Mr. Arman's hands and searched the house, destroying the Armans' personal property, but found no evidence of criminal activity in the house. (*Id*. ¶ 14.) The Armans maintain that they were in fear for their safety as well as that of their children and unborn child (Mrs. Arman was pregnant at the time), that their sons feared for their own safety as well as that of their parents, and that they suffered physical injury, post-traumatic stress disorder, property damage, and other damages as a result of the defendants' conduct. (*Id.* ¶¶ 13, 16, 23.)

Minneapolis Officer Severance prepared the application for the search warrant that led to this incident. (ECF No. 27-1 ("Warrant").) The application includes information provided by a confidential reliable informant ("CRI"). (*Id*. at 2; SAC ¶ 18.) The Armans question that CRI's reliability and honesty, and thus contend that Severance acted with reckless disregard as to whether the information was true. (SAC ¶¶ 18, 21, 22.) The Armans maintain that the statements in the search warrant—that their home contained drugs and guns—were false, and Severance acted with reckless disregard for the truth when he failed to corroborate the information of illegal activity from the CRI. (*Id.* ¶¶ 18– 21.)

## ANALYSIS

### I.  Standard under Rule 12(b)(6)

The Minneapolis Defendants move to dismiss the probable cause claim against Severance under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(6) requires that the Court dismiss a complaint for failure to state a claim upon which relief can be granted if it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When reviewing a Rule 12(b)(6) motion, a court must "tak[e] all facts alleged in the complaint as true, and mak[e] reasonable inferences in favor of the nonmoving party." *Smithrud v. City of St. Paul*, 746 F.3d 391, 397 (8th Cir. 2014). Although the factual allegations need not be detailed, they "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facial plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Thus, where a complaint alleges "facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (quoting *Twombly*, 550 U.S. at 557).

Courts primarily consider the allegations in a complaint in determining whether to grant a Rule 12(b)(6) motion. *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th

5

Cir. 2017). Courts may also consider documents "necessarily embraced by the complaint" in ruling on a Rule 12(b)(6) motion, including "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Ryan v. Ryan*, 889 F.3d 499, 505 (8th Cir. 2018) (citation omitted); *see Zean*, 858 F.3d at 526 (similar). Here, the Court may consider the search warrant and its application because they are public documents incorporated by reference into the Second Amended Complaint. (SAC ¶¶ 8, 17–18; Warrant); *see* Minn. R. Crim. P. 33.04(a) ("Search warrants and search warrant applications, affidavits, and inventories . . . must be filed with the court administrator."); *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012) (noting the contents of a notice of seizure and intent to forfeit vehicle were alleged in the complaint and thus necessarily embraced by it). Moreover, no party disputes the authenticity of the warrant and application, and the Armans rely on them in their briefs. (*E.g.*, ECF No. 58 at 2–3.)

The Armans also ask the Court to consider declarations of Mr. Arman and his attorney referenced in the Second Amended Complaint. (SAC ¶ 18.) Mr. Arman's declaration seeks to add information about who he believes the CRI was, and the CRI's possible motivation for providing false information to Severance. (ECF No. 55-1 (filed under seal).) The Armans' counsel's declaration asks the Court to deny the Rule 12 motion as it relates to probable cause and the warrant, and allow discovery to proceed on this issue, pursuant to Rule 56(d) of the Federal Rules of Civil Procedure. (ECF Nos. 54-

2, 57); *see* Fed. R. Civ. P. 56(d) (providing in part that the court may allow time to take discovery if a nonmovant shows by declaration that it cannot present facts essential to justify its opposition).

Rule 12(d) provides that if matters outside the pleadings "are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). "Matters outside the pleadings" include any written evidence "in support of or in opposition to the pleading that provide some substantiation for and does not merely reiterate what is said in the pleadings." *McAuley v. Fed. Ins. Co.*, 500 F.3d 784, 787 (8th Cir. 2007) (quoted case omitted). Mr. Arman's declaration—with its new evidence regarding the CRI—presents matters outside the pleadings. The Court finds that it can address the arguments while excluding Mr. Arman's declaration from its analysis and declines to convert the Rule 12(b)(6) motion into a motion for summary judgment under Rule 56. Because Rule 56 does not apply to the current motion, the Armans' counsel's request to conduct discovery under Rule 56(d) is denied. *See Scheffler v. Minn. Dep't of Hum. Servs.*, No. 14-CV-2946 (JNE/SER), 2015 WL 10488875, at *7 (D. Minn.), *aff'd*, 806 F.3d 448 (8th Cir. 2015) (denying motion for a continuance to conduct discovery, explaining that the court's consideration of public records specifically embraced by the complaint did not convert a motion to dismiss to a motion for summary judgment). The Court notes that at this stage of the litigation, it accepts as true the

7

allegation that the Armans have reason to "question the reliability and the honesty of the informant and have information as to his identity and his motivations to lie." (SAC ¶ 18.)

## II. Probable Cause Claim and Qualified Immunity

A warrant application and affidavit must "'describe circumstances showing a fair probability that contraband or evidence of a crime will be found in a particular place'" to establish probable cause. *Fagnan v. City of Lino Lakes*, 745 F.3d 318, 323 (8th Cir. 2014) (quoting *United States v. Keele*, 589 F.3d 940, 943 (8th Cir. 2009)). Here, the warrant application and affidavit recount the information Severance received from the CRI and his own investigation. (Warrant at 2–3.) The CRI told Severance that the narcotics seller was known as "Elbow" and provided a physical description. (*Id.* at 2.) The CRI also advised Severance that "Elbow" was using a newer model Pontiac, an older model Oldsmobile, and older model Chevy Caprice to distribute narcotics, and that "Elbow" had been convicted and served prison time for weapons and narcotics offenses. (*Id.*) The CRI identified the Armans' home as the residence used by "Elbow" to store and sell narcotics, and pointed out vehicles parked in front of the Armans' home as the vehicles used by "Elbow" in the distribution of narcotics. (*Id.*) Based on a photograph, the CRI positively identified Mr. Arman as the male known to the CRI as "Elbow." (*Id.*) The CRI also informed Severance about drugs and guns: he told Severance that he had observed a large quantity of marijuana packaged for street sale inside the Armans' home within the last seventy-two hours, and that he had observed Mr. Arman carrying a silver semi-

auto handgun on his person within the last week. (*Id.*) Finally, the CRI advised Severance that Mr. Arman was a known gang member who kept two very aggressive pit bull dogs in the house for protection. (*Id.*) Severance's own investigation found that Mr. Arman has felony convictions for narcotics and weapons violations and is prohibited from possessing a firearm. (*Id.*) Severance confirmed the home address, and the Minnesota Driver and Vehicle Services website listed the vehicles pointed out by the CRI as registered to Mr. Arman. (*Id.*) The warrant application notes that Severance had used information provided by the CRI in previous similar investigations, and that the CRI's information "has always proved honest and accurate." (*Id.*)

The Minneapolis Defendants argue that qualified immunity bars the Armans' probable cause claim against Severance. Whether an official may be held personally liable for an official act or protected by qualified immunity "generally turns on the objective legal reasonableness of the official's action, assessed in light of the legal rules that were clearly established at the time it was taken." *Kiesling v. Holladay*, 859 F.3d 529, 533 (8th Cir. 2017) (cleaned up). Where an alleged Fourth Amendment violation involves a search or seizure conducted pursuant to a warrant, the Court's analysis of qualified immunity is guided by *Messerschmidt v. Millender*, 565 U.S. 535 (2012). *Id.* In *Messerschmidt*, the Supreme Court recognized that a warrant generally confers a "shield of immunity" to officers acting within the scope of its authority. 565 U.S. at 547. "[T]he fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an

9

objectively reasonable manner." *Id.* at 546. However, an exception exists "where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 547 (citation and quotation marks omitted). Because the Armans do not allege that the magistrate who issued the warrant was not neutral, the warrant grants the officers a "shield of immunity" unless it was based on an affidavit so lacking in indicia of probable cause that it renders their belief in the existence of probable cause "entirely unreasonable." *Id.* at 547; *see Kiesling*, 859 F.3d at 534 (explaining the inquiry is "whether it was 'entirely unreasonable' for an officer to believe that the warrant application established probable cause"). "[T]he threshold for establishing this exception is a high one."[3] *Messerschmidt*, 565 U.S. at 547.

The Armans question the reliability of the CRI and maintain that Severance should have known that the CRI's information was unreliable. (SAC ¶¶ 18, 21). "When an informant's information is at least partly corroborated, . . . attacks upon credibility and reliability are not crucial to the finding of probable cause." *United States v. Gladney*, 48 F.3d 309, 313 (8th Cir. 1995) (citation and quotation marks omitted). And "[w]hen an informant has provided reliable information in the past or where his tip was

---

[3] The Armans ignore *Messerschmidt* and ask the Court to consider Minnesota state law to determine whether probable cause existed. (ECF No. 58 at 7–8 (citing *State v. Albrecht*, 465 N.W.2d 107 (Minn. Ct. App. 1991)).) But "a violation of state law, without more, does not state a claim under the federal Constitution or 42 U.S.C. § 1983." *Colbert v. Roling*, 233 F. App'x 587, 589–90 (8th Cir. 2007) (citations omitted). Thus, Severance's alleged state law violations, standing alone, do not support a Section 1983 claim.

10

independently corroborated, a court may deem the informant's tip sufficiently reliable to support a probable cause determination." *United States v. Caswell*, 436 F.3d 894, 898 (8th Cir. 2006). An "explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles [an informant's] tip to greater weight than might otherwise be the case." *United States v. Leppert*, 408 F.3d 1039, 1042 (8th Cir. 2005) (citation omitted); *see United States v. Williams*, 10 F.3d 590, 594 (8th Cir. 1993) (finding informant's information credible because it was based on his "first-hand observations, not merely from rumor or innuendo," and the informant had provided reliable information in the past). The corroboration of "minor, innocent details" can establish probable cause. *United States v. Tyler*, 238 F.3d 1036, 1039 (8th Cir. 2001) (citation omitted).

The Minneapolis Defendants argue that because the Armans dropped their probable cause claim against Brubaker and Omari, they effectively concede that the warrant contained sufficient indicia of probable cause on its face. The Court agrees. As the Armans' counsel argued at the hearing, the claim against Severance is based on his alleged "reckless disregard" as to (1) the truth of the CRI's information that there were guns and drugs at the Arman's home, and (2) the CRI's reliability. (SAC ¶¶ 18, 21); *see generally Murray v. Lene*, 595 F.3d 868, 872 (8th Cir. 2010) (construing complaint to allege both a claim that plaintiff was arrested without probable cause, and "a similar, but

distinct, claim that defendant violated plaintiff's Fourth Amendment rights by submitting a false and misleading affidavit in support of the warrant for his arrest") (cleaned up).

An application for a warrant based upon an affidavit containing a "deliberate falsehood" or "reckless disregard for the truth" violates the Fourth Amendment and subjects the officer to Section 1983 liability. *Morris v. Lanpher*, 563 F.3d 399, 402 (8th Cir. 2009). "Truthful in this context means that the information put forth is 'believed or appropriately accepted by the affiant as true.'" *Id.* (quoting *Franks v. Delaware*, 438 U.S. 154, 165 (1978)). "The test for determining whether an affiant's statements were made with reckless disregard for the truth is whether, after viewing all the evidence, the affiant must have entertained serious doubts as to the truth of [the affiant's] statements or had obvious reasons to doubt the accuracy of the information . . . reported." *Miles v. Coleman*, No. 15-CV-3696 (WMW/FLN), 2017 WL 2870498, at *4 (D. Minn. July 5, 2017) (quoting *United States v. Butler*, 594 F.3d 955, 961 (8th Cir. 2010)).

At this stage of litigation, the Court must accept what the Armans have properly pled as being true. Although the factual allegations in the complaint need not be detailed, they "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Armans simply have not done so regarding this claim against Severance. The Second Amended Complaint questions the credibility of the CRI but does not plead factual content allowing the Court to draw the reasonable inference that Severance recklessly disregarded the truth in connection with his application for the search warrant.

*Iqbal*, 556 U.S. at 678. It does not provide factual allegations indicating that Severance must have entertained serious doubts as to the truth of the CRI's statements or had obvious reasons to doubt the accuracy of the CRI's information. The warrant, which the Second Amended Complaint embraces, provides that Severance had received reliable information from the CRI before, and that Severance took steps to confirm the CRI's information about Mr. Arman. (Warrant at 2.) While Mr. Arman's home address, vehicles, and criminal record might be considered minor, innocent details, such corroboration can constitute probable cause. *See United States v. Faulkner*, 826 F.3d 1139, 1145 (8th Cir. 2016) (finding that where corroborated information established that the CRI was providing accurate information about verifiable details, the fact that the corroborated details were not about criminal activity did not "subtract from the probable cause analysis"). Because the Second Amended Complaint fails to allege facts supporting the conclusory allegation that Severance acted in reckless disregard of the truth, the probable cause claim against him is dismissed.

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. St. Paul Defendants' Motion for Partial Judgment on the Pleadings (ECF No. 22) is GRANTED;

2. Defendants Officer Matthew Severance and City of Minneapolis' Motion to Dismiss (ECF No. 32) is GRANTED; and

3. The claim against Severance is DISMISSED WITHOUT PREJUDICE.

Dated: January 22, 2021

BY THE COURT:

s/Nancy E. Brasel
Nancy E. Brasel
United States District Judge